*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

SAMUEL DEMONT BRADLEY,

        *Defendant-Appellant.*

No. 03-6328

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-00193—Thomas A. Wiseman, Jr., District Judge.

Argued: February 2, 2005

Decided and Filed: March 10, 2005

Before: NELSON and SUTTON, Circuit Judges; WELLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** John E. Rodgers, Jr., PRICE, RODGERS, HILL & KOLARICH, Nashville, Tennessee, for Appellant. William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** John E. Rodgers, Jr., PRICE, RODGERS, HILL & KOLARICH, Nashville, Tennessee, for Appellant. Darryl A. Stewart, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

## OPINION

---

    SUTTON, Circuit Judge. Samuel Bradley argues that he received ineffective assistance of counsel in deciding to sign a plea agreement and that, in any event, he is no longer bound by the agreement—specifically, its provisions that he would be sentenced under the United States Sentencing Guidelines and that he could not appeal the sentence—in the aftermath of *United States v. Booker*, 125 S. Ct. 738 (2005). Because we traditionally address ineffective-assistance claims on collateral review and because Bradley has given us no good reason for doing otherwise here, we dismiss that part of Bradley's direct appeal without reaching the merits. Because changes in the law generally do not permit either the government or a criminal defendant to renege on a plea agreement, because Bradley agreed to be sentenced under the Guidelines and because Bradley waived his right

---

[*] The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

to appeal the resulting sentence (save for claims of ineffective assistance of counsel or prosecutorial misconduct), *Booker* does not give Bradley a right to be resentenced.

I.

On November 6, 2002, a federal grand jury indicted Bradley on seven counts:  four counts of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of possession of cocaine and a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On June 23, 2003, Bradley pleaded guilty to one of the § 841(a)(1) counts and the § 922(g)(1) felon-in-possession count.  In exchange, the government dismissed the remaining counts, agreed to recommend the maximum downward adjustment for Bradley's acceptance of responsibility, agreed to recommend that Bradley be sentenced at the low end of the Guidelines' sentencing range and "waive[d] its right to appeal any sentence imposed by the District Court, except if the Court departs downward from the otherwise applicable sentencing guideline range." JA 20.

For Bradley's part, the plea agreement required him to make several concessions as well. He agreed to be sentenced under the Guidelines:

> I have been advised that I will be sentenced . . . pursuant to guidelines established by the United States Sentencing Commission. I also understand that the Judge shall impose a sentence within the guideline range unless the court finds, and states on the record, any mitigating or aggravating circumstances that were not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.

JA 12.  He acknowledged that "the guideline range in my case should be from 188 to 235 months." JA 13.  He recognized that "the Constitution guarantees" him the "right to a . . . public trial by jury" if he chose not to plead guilty.  JA 14.  He admitted that he is a "career offender" under § 4B1.1 of the Guidelines as a result of prior Tennessee state-law convictions for aggravated assault and facilitation of conspiracy to sell cocaine.  JA 19.  (Tennessee law provides that "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony."  Tenn. Code Ann. § 39-11-403.)  And he "waive[d] his right to appeal any resulting sentence directly or collaterally," save for claims of ineffective assistance of counsel or prosecutorial misconduct.  JA 19.

On September 16, 2003, the district court accepted the plea agreement and sentenced Bradley to 188 months of imprisonment (the low end of the Guidelines range) and four years of supervised release. During the Rule 11 colloquy at the sentencing hearing, the district judge informed Bradley of each of the material terms of his plea agreement—including his stipulation to career-offender status, his waiver of his right to appeal any issue (except for ineffective assistance of counsel or prosecutorial misconduct), the Guidelines' sentencing scheme and the government's concessions. When asked whether he understood and agreed to each of his concessions, Bradley answered, "Yes, sir."  JA 45, 47, 48.

## II.

Attempting to raise two challenges to the plea agreement, Bradley now appeals. He first invokes an exception to the no-appeal provision of the plea agreement, arguing that his trial counsel provided ineffective assistance by failing to inform him of case law holding that other state-law facilitation statutes (though not the Tennessee statute) may not be used as predicates to establish that a defendant is a "career offender." *See United States v. Dolt*, 27 F.3d 235 (6th Cir. 1994); *United States v. Liranzo*, 944 F.2d 73 (2d Cir. 1991). As in most direct appeals, however, the record contains scant information regarding the preparation of Bradley's trial counsel or his communications with Bradley about this or any other issue. That is why "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Because "[t]he evidence introduced at trial . . . will be devoted to issues of guilt or innocence, [ ] the resulting record [on direct appeal] in many cases will not disclose the facts necessary to decide" whether trial counsel was ineffective. *Id.* at 505. And "[t]he appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Id.* All of this explains our practice—with rare exceptions where "the record is adequate to assess the merits of defendant's allegations," *see United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)—of consistently declining to address ineffective-assistance claims on direct appeal. *See United States v. Jackson*, 181 F.3d 740, 747 (6th Cir. 1999); *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998); *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996); *United States v. Seymour*, 38 F.3d 261, 263 (6th Cir. 1994); *United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir. 1993).

We follow a similar course today. Because we cannot tell from this record what trial counsel told Bradley about this issue or about the risks of declining to accept a plea agreement that dropped five counts from the indictment, we leave this issue to be decided in the first instance in post-conviction proceedings. *See Massaro*, 538 U.S. at 505 ("[I]neffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial.").

## III.

Bradley next argues that his sentence is inconsistent with the Supreme Court's decision in *United States v. Booker* and urges us to remand the case to the district court for resentencing. As an initial matter, Bradley is mistaken in contending that his sentencing enhancement violates the Sixth Amendment, even after *Booker*. Bradley's enhancement arose from his status as a "career offender" under § 4B1.1 of the Sentencing Guidelines, to which he stipulated in his plea agreement, and indeed it is that stipulation that forms the central premise of his ineffective-assistance claim. The Sixth Amendment does not apply to agreed-upon facts; it regulates the decisionmaker of disputed facts. *See Blakely v. Washington*, 124 S. Ct. 2531, 2537 (2004) (holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or *admitted by the defendant*") (some emphasis removed).

Even had the parties disputed the fact of Bradley's prior convictions, moreover, his sentence stems from the very type of recidivism enhancement that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), held need not be charged and proved before a jury. From *Apprendi* to *Blakely* to *Booker*, the Court has continued to except such factfinding from the requirements of the Sixth Amendment. *See Booker*, 125 S. Ct. at 756 ("Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."); *Blakely*, 124 S. Ct. at 2536

("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); *United States v. Marseille*, 377 F.3d 1249, 1257–58 (11th Cir. 2004) (recognizing that § 4B1.1 falls within the prior-conviction exception to the Court's Sixth Amendment jurisprudence).

That Bradley does not have a tenable *constitutional* claim, however, does not prove the absence of a tenable *statutory* claim. Because the statutory-severance remedy adopted by *Booker* sweeps more broadly (in terms of affected sentences) than the constitutional violation that the Court sought to fix, *see* 125 S. Ct. at 769, Bradley may fairly say that all parties to this dispute—Bradley, his lawyer, the government and the district court—suffered from the misapprehension that the federal Sentencing Guidelines were mandatory, not advisory, at the time of the plea agreement. Had he known that the Guidelines were merely advisory, Bradley argues, he would not have accepted the government's plea-bargain offer but would have driven a harder bargain.

But even if Bradley is right that he would have sought better terms had he known the Guidelines were advisory and even if we overlook the fact that the government itself might have done the same had it known that it could readily threaten an upward variation in his sentence, the terms of the plea agreement themselves prevent us from granting Bradley's request. Plea agreements, the Supreme Court has long instructed, may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future. As to constitutional rights in existence at the time of the plea-bargain negotiations, a plea agreement may waive the right to view impeachment information relating to any informants or other witnesses, *see United States v. Ruiz*, 536 U.S. 622 (2002), the right not to be charged twice for the same crime, *see United States v. Broce*, 488 U.S. 563 (1989), the right to challenge a prior coerced confession, *see McMann v. Richardson*, 397 U.S. 759 (1970), and most pertinently the right to a trial by jury, *see Boykin v. Alabama*, 395 U.S. 238, 243 (1969); Fed. R. Crim. P. 11(b)(1)(C). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Broce*, 488 U.S. at 570.

At the same time, the Court has explained that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance. "[A]bsent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United Sates*, 397 U.S. 742, 757 (1970) (holding that a defendant could not claim his plea was involuntary by relying on a Supreme Court decision that declared unconstitutional a provision relevant to his criminal sentence). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id. See also Ruiz*, 536 U.S. at 630 ("[T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."); *id.* (citing as one possible misapprehension that "defendant failed to anticipate a change in the law regarding relevant punishments") (quotation marks omitted); *Bousley v. United States*, 523 U.S. 614, 619 (1998) ("We further held [in *Brady*] that [the defendant's] plea was intelligent because, although later judicial decisions indicated that at the time of his plea he did not correctly assess every relevant factor entering into his decision, he was advised by competent counsel, was in control of his mental faculties, and was made aware of the nature of the charge against him.") (citations and quotation marks omitted); *Broce*, 488 U.S. at 573 ("Our decisions have not suggested that conscious waiver is necessary with respect to each potential

defense relinquished by a plea of guilty."); *United States v. Derian*, No. 01-1039, 27 Fed. Appx. 450, 453, 2001 U.S. App. LEXIS 24180, at *6 (6th Cir. 2001) (unpublished).

In this case, Bradley's plea agreement functioned in much the same way as Brady's plea agreement in *Brady v. United States*. Brady pleaded guilty to a life sentence in order to avoid a death sentence under 18 U.S.C. § 1201(a). On learning that the Supreme Court had invalidated this death-penalty provision in *United States v. Jackson*, 390 U.S. 570 (1968), because it "made the risk of death the price of a jury trial," *Brady*, 397 U.S. at 746, Brady claimed that "his plea of guilty was not voluntarily given because § 1201(a) operated to coerce his plea." *Id.* at 744. The Supreme Court rejected Brady's argument. Here, too, Bradley asks us to invalidate his sentence because he did not know when he pleaded guilty that the Supreme Court would later declare the Sentencing Guidelines to be advisory in *Booker*. And here, too, the change in law cannot undo his plea.

Not only do the circumstances in this case parallel those in *Brady v. United States* but the reasoning underlying *Brady* applies with equal force here. Plea bargains always entail risks for the parties—risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and risks relating to future developments in the law. The salient point is that a plea agreement allocates risk between the two parties as they see fit. If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal. *See Young v. United States*, 124 F.3d 794, 798 (7th Cir. 1997) ("If the law allowed the defendant to get off scot free in the event the argument later is shown to be a winner, then the defendant could not get the reduction in the first place. Every plea would become a *conditional* plea, with the (unstated) condition that the defendant obtains the benefit of favorable legal developments, while the prosecutor is stuck with the original bargain no matter what happens later. That approach destroys the bargain, and the prospect of such an outcome will increase the original sentence.").

An illustration of the reciprocity that marks most plea agreements is the parallel appeal waivers that Bradley and the government agreed to in this instance. Simultaneous waivers of the right to appeal by two parties to a plea agreement, as here, would amount to little if future changes in the law permitted the benefitted party nonetheless to appeal. One does not foretell much in predicting future changes in criminal law. And one foretells even less in predicting that those changes will benefit one side of a criminal case or the other. Having voluntarily and knowingly bargained for a decrease in the number of counts charged against him and for a decreased sentence, Bradley cannot now extract two components of that bargain—his agreement to be sentenced under the then-mandatory Guidelines and his agreement to waive his right to appeal—on the basis of changes in the law after that bargain was struck. *See, e.g.*, *United States v. Calderon*, 388 F.3d 197 (6th Cir. 2004) (enforcing waiver of right to appellate review); *United States v. Sykes*, 292 F.3d 495 (6th Cir. 2002) (enforcing waiver of right to appellate review in the context of an *Apprendi* challenge); *United States v. Allison*, 59 F.3d 43 (6th Cir. 1995) (enforcing waiver of right to appellate review); *cf. United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005) ("Plea bargains . . . are like contracts and should be interpreted in accord with what the parties intended.").

In reaching this conclusion both with respect to Bradley's agreement that he would be sentenced under the Guidelines and his waiver of the right to appeal, we join four other circuits that have reached similar conclusions in the aftermath of *Booker*. *See United States v. Parsons*, 369 F.3d 1015, 1017–18 (8th Cir. 2005) ("[T]here would be no merit to an argument that [the defendant] is entitled to resentencing under advisory Guidelines in light of *Booker*. He expressly agreed as part of his plea agreement that he would be sentenced under the Guidelines."); *United States v. Fleischer*, No. 04-3911, 2005 U.S. App. LEXIS 1799, at *3–4 (2d Cir. Feb. 3, 2005) (unpublished) (rejecting

the defendant's argument that "the waiver provision of his plea agreement is inoperative because it was entered before the Supreme Court clarified the Sixth Amendment's application to the federal Sentencing Guidelines"); *Rubbo*, 396 F.3d at 1335 (observing that "the right to appeal a sentence based on *Apprendi*/*Booker* grounds can be waived in a plea agreement" and that "[b]road waiver language covers those grounds of appeal"); *United States v. Sahlin*, No. 04-1324, 2005 U.S. App. LEXIS 3018, at *8 (1st Cir. Feb. 22, 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea.").

Nor do we think that this approach will operate unfairly in practice. As *Booker* makes sentencing ranges under the Guidelines advisory both with respect to the peak and valley of each range, the ability to seek reasoned variations from these ranges is as apt to be a sword as a shield for the criminal defendant. For Bradley has given us no explanation why a rule permitting criminal defendants to abandon their agreement to be sentenced under the then-mandatory Guidelines or their agreement not to appeal a sentence in the aftermath of *Booker* would not allow the government to do the same. Neither must all criminal defendants agree to the terms to which Bradley did. The Federal Rules of Criminal Procedure give the parties ample room to tailor plea agreements to different needs—whether they are the right to appeal, the right to benefit from future changes in the law or other concerns that the defendant (and his attorney) may have. *See* Fed. R. Crim. P. 11(a)(2) (permitting the government and a defendant, with the consent of the court, to enter a conditional plea of guilty that "[a] defendant who prevails on appeal may then withdraw"). Here, no such condition existed and Bradley's willingness to be sentenced under the Guidelines and generally to waive his right to appeal binds him no less now than it did when he signed the agreement.

IV.

For these reasons, we choose not to review Bradley's ineffective-assistance claim on this direct appeal and dismiss the remainder of his appeal as inconsistent with the appellate-review waiver in his plea agreement.