**No. 04-2483**
File Name: 05a0953n.06
Filed: December 6, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
|      v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| TYRONE ORLONDE COX, | ) DISTRICT OF MICHIGAN |
| | ) |
|    Defendant-Appellant. | ) |

Before:     **MARTIN**, **NELSON**, and **ROGERS**, Circuit Judges.

**DAVID A. NELSON**, Circuit Judge.  This is an appeal from a judgment of conviction and sentence in a federal criminal case.  The defendant challenges (1) the denial of a motion to suppress statements he made to a federal agent without having been advised of his *Miranda* rights; (2) the denial of a motion to exclude evidence of prior convictions; and (3) the sentence, which was imposed prior to the Supreme Court's issuance of its decision in *United States v. Booker*, 125 S. Ct. 738 (2005).  We shall affirm the challenged judgment in all respects.

I

In November of 2003 Special Agent Mark Kloostra, of the Bureau of Alcohol, Tobacco, and Firearms, obtained a warrant to search the residence of the defendant, Tyrone Cox. To facilitate execution of the warrant Agent Kloostra arranged to speak with Mr. Cox when the latter next reported to his probation officer. (Mr. Cox was on probation for a Michigan conviction.) Kloostra told Cox about the warrant, handcuffed him "for the safety of all the probation officers," and asked for the keys to his house. Cox provided the keys, which were in the possession of a friend who had accompanied him to the probation office. Kloostra explained that Cox would have to remain at the probation office while the warrant was executed and that Kloostra would return when the search was complete.

Agent Kloostra returned to the probation office about an hour and 20 minutes later. He removed the handcuffs from Mr. Cox, gave back the borrowed keys, and handed Cox a copy of the search warrant and a list of what had been discovered. Kloostra told Cox that two firearms and a quantity of cocaine had been found in the house, and he said that an arrest warrant would be issued for Cox "at a later date." Kloostra told Cox that he was free to go if his probation officer did not need him any longer.

Agent Kloostra then asked Mr. Cox how long he had lived in the house. Cox answered that he had lived there eleven years, adding that he lived alone but that his young son stayed with him sometimes. Mr. Cox then left the probation office.

A federal grand jury indicted Mr. Cox on charges of possession of cocaine base and possession of a firearm by one convicted of a felony.

Mr. Cox filed a motion in limine to suppress the statements made to Agent Kloostra after the execution of the search warrant. The district court denied the motion on the ground that Cox had not been in custody at the time the statements were made.

Mr. Cox also moved to exclude evidence of prior convictions. The district court granted the motion in part and denied it in part, ruling that a 1987 conviction for attempted uttering and publishing of altered money orders (a conviction that had resulted in a term of imprisonment ending some eleven years earlier) and a 2003 conviction for attempted carrying of a concealed weapon would be admissible for impeachment purposes should the defendant elect to testify.

The evidence at trial showed that the police found a semi-automatic pistol in the master bedroom of Cox's house, a revolver in a hallway closet, and crack cocaine in a fish food container in the living room. Mr. Cox took the stand and testified that several other people had stayed at his house, including a brother who was addicted to crack cocaine. Cox said he did not know there were guns and cocaine in the house.

In an effort to impeach Cox's credibility, the government then brought out the convictions for attempted carrying of a concealed weapon and attempted uttering and publishing. The district court promptly instructed the jury that these convictions "were brought to [the jury's] attention only in one way of helping [it] decide how believable his testimony was." The court emphasized that the convictions are "not evidence that [Cox] is guilty of crimes that he is on trial for now."

The jury found Mr. Cox guilty of both charges. At sentencing the district court applied an obstruction-of-justice enhancement under § 3C1.1 of the United States Sentencing Guidelines, the jury's verdict having reflected a finding that Cox testified falsely. Without the enhancement, the guideline sentence range would have been imprisonment for a term of between 37 and 46 months. With the enhancement, the range was 46 to 57 months. The court chose to impose a sentence of 48 months. The court also announced that it would impose precisely the same sentence "in the event that the United States Supreme Court determines that the sentencing guidelines are invalid or unconstitutional."

Mr. Cox filed a timely appeal.

II

Mr. Cox argues that his statements to Agent Kloostra should have been suppressed because he was not given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). The *Miranda* warnings must be given prior to interrogation of a suspect who is in police custody. See *Thompson v. Keohane*, 516 U.S. 99, 107 (1995). The question here is whether Cox was in custody when Kloostra asked how long he had lived in his house. This is a mixed question of fact and law subject to de novo review. See *id.* at 112-13; *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003).

We are satisfied that Mr. Cox was not in custody at the time of the questioning. Agent Kloostra had removed Mr. Cox's handcuffs, returned his house keys, told Cox that an arrest

warrant would be issued "later," and told him that he was free to go as far as Kloostra was concerned. These actions would have made it clear to any reasonable person, we believe, that custody had, for the time being, come to an end. Cox could not reasonably have "felt he was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112. Indeed, Cox did "terminate the interrogation and leave" after responding to a single question from Kloostra. Not only was there no formal arrest as of the critical juncture, there was no "restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (internal quotation marks omitted). We find no error in the admission of the statements.

## III

Mr. Cox argues next that the government should not have been permitted to impeach his credibility with the conviction for attempted uttering and publishing of altered money orders and the conviction for attempted carrying of a concealed weapon. A district court's decision to admit evidence is reviewed for abuse of discretion. See *United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004). "Under this standard, we take a maximal view of the evidence's probative effect and a minimal view of its unfairly prejudicial effect." *Id.* (internal quotation marks omitted).

A

Under Rule 609(a), Fed. R. Evid., evidence that a defendant in a criminal case has been convicted of a crime punishable by imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect . . . ." A stricter standard applies if a period of more than ten years has elapsed from the date of the conviction or from the date of the defendant's release from confinement for the conviction, whichever comes later. Once such a ten-year period has run, evidence of the conviction is admissible only if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Rule 609(b), Fed. R. Evid.

It is undisputed that Mr. Cox was released from confinement on his uttering-and-publishing conviction approximately eleven years before the trial in the current case. Admissibility of the conviction is therefore governed by the stricter standard.

We do not think the district court abused its discretion in admitting evidence of the conviction under the prescribed standard. Mr. Cox's credibility was a central issue at trial, the main question for the jury being whether Cox knew the firearms and cocaine were in his possession. Because uttering and publishing is a crime "involving dishonesty," *United States v. Virta*, Nos. 92-2343/2443/2453/2454/2471, 1994 WL 18023, at **11 (6th Cir. Jan. 21, 1994), *cert. denied*, 511 U.S. 1060 (1994), the conviction was particularly probative of the credibility issue. As for potential prejudice, it seems to us that the dissimilarity between

uttering and publishing and the crimes for which Cox was on trial made it unlikely that the jury would draw an improper "propensity" inference. Nor was it likely that evidence of the uttering-and-publishing conviction would inflame the jury's passions.

Mr. Cox relies on *United States v. Sims*, 588 F.2d 1145 (6th Cir. 1978), where we said that "evidence of convictions more than ten years old will be admitted very rarely and only in exceptional circumstances." *Sims*, 588 F.2d at 1150 (internal quotation marks omitted). We do not read *Sims* as imposing a standard more stringent than that set out in Rule 609(b). For the reasons we have indicated, we do not believe that the district court abused its discretion in finding the Rule 609(b) standard met in the case at bar.

B

Because Mr. Cox's concealed-weapon conviction is less than ten years old, evidence of that conviction is admissible if its probative value outweighs (not "substantially outweighs") its prejudicial effect. See Rule 609(a), Fed. R. Evid.

Although carrying a concealed weapon is not a crime involving dishonesty per se, the concealed-weapon conviction was probative of Mr. Cox's credibility. *Cf. United States v. Moore*, 917 F.2d 215, 235 (6th Cir. 1990) (holding that an armed-robbery conviction "went to credibility, and had impeachment value"), *cert. denied*, 499 U.S. 963 (1991). There was a risk that the jury would draw an improper "propensity" inference from the prior conviction,

particularly if the jury assumed that the weapon Cox attempted to carry was a firearm, but that risk was mitigated by an immediate limiting instruction.

In *Moore*, where the government used evidence of a prior armed-robbery conviction to impeach a defendant charged with armed robbery, we held that a limiting instruction sufficiently avoided the potential prejudice:

> "Although the crimes were similar, the trial court was quick to limit any prejudicial effect by an immediate admonishment to the jury to consider the evidence only as to witness credibility. This cautionary admonishment to the jury, we believe, provided an adequate safeguard against any potential prejudice possibly engendered by the admission of the prior conviction." *Id.*

In light of *Moore*, we cannot say that the district court abused its discretion in determining that the probative value of the concealed-weapon conviction outweighed its prejudicial effect.

IV

Finally, Mr. Cox argues both that the obstruction-of-justice sentence enhancement violated his Sixth Amendment right to a jury trial and that the district court erred to his prejudice in viewing the sentencing guidelines as mandatory. Both arguments are grounded on the line of cases culminated by *United States v. Booker*, 125 S. Ct. 738 (2005).

Under *Booker* and its precursors, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury

beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756; see *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2537 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). If the guideline system under which the district court enhanced Mr. Cox's sentence were mandatory, therefore, the fact or facts supporting the enhancement would have had to have been submitted to and found by the jury.

As we now know, of course, the guidelines are not mandatory. *Booker*, which was decided about two months after Mr. Cox's sentencing, altered the federal sentencing scheme in such a way that the guidelines must be treated as merely advisory. See *Booker*, 125 S. Ct. at 767. The district court understandably failed to anticipate that specific development. The court did anticipate, however, the possibility that the guidelines would be invalidated altogether. "[I]n the interest of judicial economy," therefore, and in accordance with interim guidance provided by *United States v. Koch*, No. 02-6278, 2004 WL 1870438 (6th Cir. Aug. 13, 2004) (en banc), *vacated*, 125 S.Ct. 1944 (2005), the court announced that it would impose "the same identical sentence" should that eventuality come to pass.

But for this alternative sentence, the court's selection of a 48-month term under guidelines that the court understood to be mandatory would necessitate a remand for resentencing. See *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005). On remand the court would be required to take the advice provided by the guidelines into account, but the court would be free to impose a sentence outside the guideline range under the court's own weighing of the sentencing factors enumerated in 18 U.S.C. § 3553(a).

As matters now stand, the district court has told us rather emphatically what it would do if there were no guidelines at all; the court would impose a sentence of 48 months. The court did not specifically refer to the statutory factors in this connection, but we do not believe that an incantation of § 3553(a) factors was required. The sentencing transcript shows that the court carefully reviewed the defendant's personal history, probed his motivations and attitudes, reviewed his record of past criminal convictions, and came up with an individualized sentence the substance of which is unassailable under the statute. (Although the mere fact that a district court has provided for an alternate identical sentence does not mean that affirmance of a defendant's sentence is automatic, Mr. Cox is not contending here that the alternate sentence is unreasonable; the district court's analysis satisfies us that it is not.) We take at face value the court's statement as to what it would do in the absence of any guidelines at all, and the fact that the guidelines must still be consulted, even though they are not mandatory, leaves no room for meaningful doubt in this case as to what the result of a post-*Booker* resentencing would be. On the record before us, we are satisfied that the district court's alternative sentence renders any sentencing error harmless. See *Christopher*, 415 F.3d at 593-94.

**AFFIRMED**.