*409 KAREN NELSON MOORE, Circuit Judge,
dissenting.
Because I believe that Turner did not unambiguously waive the right to challenge his sentence on the basis of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), I respectfully dissent.
Turner’s plea agreement includes the following provision: “The defendant agrees to waive any challenge to the validity of the Sentencing Guidelines.” Joint Appendix (“J.A.”) at 22-23 (Plea Agreement 1112) (emphasis added). Turner does not challenge the validity of the Guidelines; instead, he simply argues that the district court erred by treating the Guidelines as mandatory rather than advisory. In fact, Turner explicitly acknowledges that the Guidelines are valid and must be considered at sentencing. Appellant’s Br. at 17 (recognizing that under Booker, “judges should continue ‘to take account of the Guidelines together with other sentencing goals,’ ” and “a sentencing court must at least consider the Guidelines in fashioning a sentence” (quoting Booker, 125 S.Ct. at 764)). It is clear, then, that what Turner challenges is not the validity of the Guidelines but simply their mandatory application to him.[1] Because the plain language of the waiver provision prohibits only challenges to the validity of the Guidelines, Turner’s appeal does not come within its terms and is not waived.
The same result would be compelled even if we were to assume that the plea agreement’s text is unclear. First, the proceedings in the district court counsel interpreting the clause not to reach Turner’s appeal: at both the plea colloquy and the sentencing hearing, the district court told Turner—without objection by the government—that he had a right to appeal.[2] *410 J.A. at 39 (Rearraignment Tr. at 14) (“THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose? THE DEFENDANT: Yes, sir.”), 61 (Sentencing Tr. at 19) (“THE COURT: ... Mr. Turner, you have the right to appeal the sentence the Court just stated.”).[3] Moreover, plea agreements are to be interpreted strictly, with ambiguities construed against the government. E.g., United States v. Johnson, 979 F.2d 396, 399-400 (6th Cir. 1992) (“[B]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in the plea agreements.” (internal quotation marks and citations omitted)); United States v. Gebbie, 294 F.3d 540, 551-52 (3d Cir.2002) (citing cases); Restatement (Second) of Contracts § 206 (1981) (“In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words.... ”). Finally, “it is particularly appropriate to construe the ambiguity against the government ... where the government could have taken steps to avoid imprecision.” United States v. Fitch, 282 F.3d 364, 368 (6th Cir.2002). Here, the government easily could have drafted a waiver provision unambiguously encompassing Turner’s appeal. See United States v. Bradley, 400 F.3d 459, 461, 465 (6th Cir.) (declining to reach a statutory Booker claim where the defendant had “waive[d] his right to appeal any resulting sentence directly or collaterally” (alteration in original)), cert. denied, — U.S. -, 126 S.Ct. 145, 163 L.Ed.2d 144 (2005).[4]
Turner did not waive his appeal requesting that he be sentenced under an advisory Guidelines scheme simply by agreeing “to waive any challenge to the validity of the Sentencing Guidelines.” Nor did his agreement to be sentenced under the Guidelines effect a waiver of his appeal. United States v. Smith, 429 F.3d 620, 626-27 & n. 5 (6th Cir.2005); United States v. Puckett, 422 F.3d 340, 343 (6th Cir.2005); United States v. Amiker, 414 F.3d 606, 607 (6th Cir.2005). In light of the absence of an appellate waiver, and because I agree with the majority that the district court committed plain error by treating the Guidelines as mandatory when it sentenced Turner, Majority Op. at -, I *411 would vacate his sentence and remand to the district court for resentencing.
Thus, I respectfully dissent.

. The majority claims that this distinction is purely a semantic one. Yet the majority also concedes that the provision did not effect a waiver of the right to appeal a miscalculation of the Guidelines. I fail to see, and the majority fails to explain, how a challenge to the calculation of the Guidelines does not attack the validity of the Guidelines, but a challenge to the mandatory application of the Guidelines does constitute such an attack. In either case, the defendant’s argument is that the Guidelines were misapplied (whether by miscalculation or erroneously mandatory application), which carries with it an implicit starting premise that the Guidelines are valid.

. The rule of United States v. Fleming, 239 F.3d 761 (6th Cir.2001)—that when a defendant has explicitly waived his right to appeal, a district court’s statements to the contrary are not controlling, id. at 765—presents no bar to our consideration of these proceedings. The appellate waiver in Fleming, which provided that the "defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction and the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever,” id. at 762, unambiguously encompassed the defendant’s appeal. In contrast, where, as here, the interpretation of the plea agreement is at issue, extrinsic evidence may be considered. E.g., United States v. Copeland, 381 F.3d 1101, 1105 (11th Cir.2004); United States v. Gebbie, 294 F.3d 540, 551 (3d Cir. 2002); United States v. Clark, 218 F.3d 1092, 1095 (9th Cir.), cert. denied, 531 U.S. 1057, 121 S.Ct. 668, 148 L.Ed.2d 569 (2000); Hartman v. Blankenship, 825 F.2d 26, 29 (4th Cir.1987); see also K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 757 n. 5 (6th Cir.1985). Furthermore, traditional principles of contract law—which we look to when interpreting plea agreements, e.g., United States v. Robison, 924 F.2d 612, 613 (6th Cir.1991)— support this result. It is well established that extrinsic evidence may be considered to resolve ambiguous contract terms. E.g., NILAC Int’l Mktg. Group v. Ameritech Servs., Inc., 362 F.3d 354, 359 (6th Cir.2004); Miller v. McLean County Unit Dist. No. 5 (In re Modern Dairy of Champaign, Inc.), 171 F.3d 1106, 1109 (7th Cir. 1999) (Posner, C.J.); 6 Arthur Linton Corbin, Corbin on Contracts § 579, at 127 (interim ed. 2002); 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 33:39, at 808 (4th ed. 1999); Eric A. Posner, The Parol Evidence Rule, the Plain *410 Meaning Rule, and the Principles of Contractual Interpretation, 146 U. Pa. L.Rev. 533, 534 (1998); see also Restatement (Second) of Contracts §§ 202 & cmt. a, 212 & cmt. b (1981) (permitting the consideration of extrinsic evidence even if no ambiguity exists); U.C.C. § 2-202 & cmt. 1(c) (1998) (same).

. According to the majority, the district court only meant that Turner "could challenge the court's calculation of his criminal history and Guidelines sentencing range.” Majority Op. at -. Nothing in the court's statements actually suggests such a limitation, and I am unwilling to conjure words to put in the district judge’s mouth. Thus, I respectfully disagree with the majority’s characterization.

. The majority believes that drafting a waiver that unambiguously encompasses statutory Booker appeals is "too high” a "burden” on the government. This claim is difficult to square with the ease with which it was done in Bradley. The fact is that the government drafted Turner's plea agreement, and it chose to use narrow language addressing only challenges to the validity of the Guidelines. The majority excuses the government from the consequences of its choice by lamenting that it could not have predicted the precise Booker remedy. It is puzzling, to say the least, to propose that although we hold a defendant to the language of his plea agreement when intervening cases make his bargain worse, Bradley, 400 F.3d at 463-64, we should be willing to rewrite the agreement to save the government from the same fate.