**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0396n.06**
**Filed: June 7, 2006**

**No. 04-2474**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAMONE LAMANT JOHNSON, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge. A jury convicted Ramone Johnson of one count of possession with

intent to distribute more than 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1)

and § 841(b)(1)(A)(iii), and the district court sentenced him to 144 months in prison. On appeal,

Johnson challenges his conviction (on the ground that his attorney provided ineffective assistance

of counsel) and his sentence (on the ground that the district court sentenced him before *United States*

*v. Booker*, 543 U.S. 220 (2005)). Because we generally decline to review ineffective-assistance

claims on direct appeal, because Johnson has given us no good reason for departing from that rule

here and because the district court issued an identical, alternative sentence in anticipation of *Booker*,

we affirm.

I.

On September 26, 2003, confidential informant Rick Brown arranged to purchase approximately one ounce of cocaine from Johnson. Before Brown met with Johnson, an officer of the Kalamazoo Department of Public Safety searched Brown and his vehicle to ensure that Brown did not possess any money or drugs. The officer then gave Brown "twelve or thirteen hundred dollars" in cash for the exchange and followed Brown to a store parking lot where Brown had agreed to meet Johnson. JA 112. Two officers observed Johnson arrive at the store and get into Brown's car for a short time. According to Brown, Johnson then gave him one ounce of cocaine, and Brown gave Johnson the money. After the transaction, Brown gave the officers what a Michigan state police forensic scientist later determined was 27.78 grams of powder cocaine.

During their initial exchange, Brown and Johnson planned a second transaction for four days later. Johnson agreed to sell Brown four-and-a-half ounces of crack cocaine for $3,300. Before the second exchange, officers again searched Brown and his vehicle and again provided him with cash for the drugs. This time, they also equipped him with a device that would record and transmit audio signals. They followed Brown as he drove to a grocery store and observed Johnson drive up and stop next to Brown's car in the parking lot. Johnson exited his vehicle and entered the front passenger seat of Brown's car. Through the transmitter, the officers heard Johnson tell Brown that he should decrease the payment for the drugs by about a hundred dollars because Johnson was about five grams short. As Brown began counting out the money to pay Johnson, the officers approached

the vehicle and, after a struggle, arrested Johnson. The police recovered 109.69 grams of cocaine base (crack) from the car.

After the officers gave Johnson his *Miranda* warnings, he agreed to speak with them. Johnson initially denied any wrongdoing but eventually told them that he had obtained powder cocaine that morning and that he had cooked it to convert it to crack cocaine at his grandmother's house. Officers went to the address Johnson gave them for his grandmother, and she allowed them to search her house. The officers recovered a metal spoon and a digital scale on which a forensic scientist later identified cocaine residue, another scale and a measuring cup on which the scientist identified crack cocaine residue, plastic Ziploc baggies and an empty bottle of Inositol powder, a material commonly used as a cutting agent for cocaine. Johnson also consented to a search of his home, where officers seized a small amount of crack cocaine and $300 from the cash that Brown had given to Johnson during the first exchange.

The jury found Johnson guilty of possession with intent to distribute more than 50 grams of a substance containing cocaine base. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). On November 1, 2004, the district court held a sentencing hearing at which neither the government nor Johnson expressed any objections to the presentence report. The court adopted, without objection, the report's factual findings that Johnson's offense level was 32 and his criminal-history category was II, giving him a sentencing range of 135 to 168 months that could not be reduced below 120 months given the statutory mandatory minimum of 10 years. The court also "reviewed and t[ook] into account" a series of letters from more than a dozen people who knew Johnson and a letter from

Johnson himself. JA 187. Johnson addressed the court as well during the hearing. His attorney requested the minimum sentence under the guidelines of 135 months and asked the court for "an alternative sentence" of 10 years in the event the pending *Booker* decision invalidated the guidelines. JA 188.

After stating that it had "carefully considered the factors in 18 [U.S.C. §] 3553," the court sentenced Johnson to 144 months in prison. JA 190–92. It also held that "[i]n the event that the guidelines are held to be unconstitutional and/or simply advisory, the Court orders that the alternative sentence . . . shall be the same as the guideline sentence, the guideline sentence appearing to be appropriate to the Court in this case, particularly due to Mr. Johnson's criminal record." JA 192; *see* JA 186 ("Mr. Johnson has two criminal history points, notwithstanding ten adult convictions.").

## II.

### A.

Johnson first argues that his trial counsel provided ineffective assistance in the following ways: his attorney "failed to even object once during the two day trial or at sentencing," "stipulated to all of the evidence presented at trial," "did not even object or investigate if the chain of custody was broken as to each piece of evidence" and "did not call two witnesses who were in the vehicle" with Johnson during the second drug deal. Johnson Br. at 14. As we have noted frequently, however, we generally do not entertain ineffective-assistance claims on direct appeal. *See, e.g.*,

*United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005). In "rare" cases, where "the record is adequate to assess the merits of [the] defendant's allegations," *id.* (internal quotation marks omitted), we may depart from this rule, but the "customary procedure" is for a defendant to raise ineffective-assistance claims in post-conviction proceedings under 28 U.S.C. § 2255, *United States v. Hill*, 30 F.3d 48, 51 (6th Cir. 1994). Because the "evidence introduced at trial . . . will be devoted to issues of guilt or innocence, [] the resulting record [on direct appeal] in many cases will not disclose the facts necessary to decide" an ineffective-assistance claim. *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also id.* at 504 ("[A] motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance.").

Johnson's appeal is not the rare one prompting us to depart from our customary practice and indeed illustrates the wisdom of that practice. "As in most direct appeals, [ ] the record contains scant information" concerning Johnson's trial counsel's investigations, analysis and strategy. *Bradley*, 400 F.3d at 461. Without this information, we cannot evaluate his counsel's decision not to object to the government's introduction of certain evidence or his reasons for declining to call the two witnesses Johnson identifies. *See id*. at 462 ("[T]he appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.") (internal quotation marks omitted); *United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 2005) ("[T]he record is inadequate to address [defendant's] ineffective assistance of counsel claim" because when the record does not contain "an explanation from trial counsel" about trial decisions, "we have no basis to determine"

whether counsel's actions were "the result of inadequate representation or reasonable trial strategy.").

No less importantly, the trial-court record does not permit us to assess a crucial aspect of an ineffective-assistance claim: prejudice. The record contains no information about the chain-of-custody evidence stipulated to by defense counsel. Without a record on this matter, we cannot determine whether the uncontested admission of the evidence harmed Johnson. Under these circumstances, if Johnson wishes to bring an ineffective-assistance claim, he must do so by filing a § 2255 motion.

B.

Johnson next argues that because the district court sentenced him before *Booker*, it must resentence him under non-mandatory guidelines. Because Johnson did not preserve this issue by objecting to it at the time of sentencing, he receives plain-error review on appeal. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). We have held that a defendant establishes plain error and a right to resentencing when the district court sentenced him under mandatory guidelines. *Id.* at 525–27. But we have also "concluded that when a district court imposes alternative, identical sentences, one under a regime in which Guidelines enhancements are not mandatory, the harmlessness of any *Booker* error is established." *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005).

Consistent with our suggestion in *United States v. Koch*, No. 02-6278, 2004 U.S. App. LEXIS 17640, at *2 (6th Cir. Aug. 13, 2004) (en banc), that "the district courts within this circuit also announce at the time of sentencing a sentence pursuant to [18 U.S.C. § 3553(a)], treating the Guidelines as advisory only," and consistent with Johnson's request, the district court issued an alternative sentence in this case. Noting that it had "carefully considered the factors in 18 [U.S.C. §] 3553," JA 190, it determined that "[i]n the event that the guidelines are held to be unconstitutional and/or simply advisory, the Court orders that the alternative sentence . . . shall be the same as the guideline sentence, the guideline sentence appearing to be appropriate to the Court in this case, particularly due to Mr. Johnson's criminal record," JA 192.

As we have reasoned before under similar circumstances, "explicit discussion of an identical alternative sentence seems to be precisely the type of clear and specific evidence that is needed to rebut the presumption of prejudice that this Circuit affords defendants . . . under post-*Booker* plain-error review." *United States v. Till*, 434 F.3d 880, 886 (6th Cir. 2006) (internal quotation marks and citation omitted; ellipses in original). Because the district court specifically indicated that it had considered § 3553(a)'s factors and noted that a sentence within the advisory guidelines range was appropriate, "particularly due to Mr. Johnson's criminal record," JA 192, it offered "some measure of reasoning" supporting its imposition of the identical alternative sentence "under the advisory-only Guidelines," thus obviating the need for resentencing, *Till*, 434 F.3d at 887. And indeed it bears emphasis that Johnson's counsel requested the district court to issue an alternative sentence to account for the contingency that the Supreme Court might invalidate the guidelines.

"Although the mere fact that a district court has provided for an alternate identical sentence does not mean that affirmance of a defendant's sentence is automatic, [Johnson] is not contending here that the alternate sentence is unreasonable." *United States v. Cox*, No. 04-2483, 2005 U.S. App. LEXIS 26782, at *13 (6th Cir. Dec. 6, 2005). Because Johnson complains only about the mandatory-guidelines aspect of his sentencing, because the district court issued an alternative sentence in the event the guidelines were invalidated and because Johnson has not challenged the reasonableness of that sentence on procedural or substantive grounds, he has not established that the district court committed plain error in imposing this 144-month sentence.

III.

For these reasons, we affirm.