**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2254
_____

UNITED STATES OF AMERICA

v.

ERNEST LAMONT PARKER,
Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-09-cr-00262-001)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 18, 2019
_____

Before: AMBRO, RESTREPO, and FISHER, *Circuit Judges*.

(Filed: November 1, 2019)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Ernest Lamont Parker challenges the validity of the collateral challenge waiver in his guilty plea agreement. He argues that he did not "knowingly" agree to this waiver provision and that it "works a miscarriage of justice" against him. We will affirm the District Court's decision to uphold the collateral challenge waiver and deny Parker's motion for post-conviction relief.

**I**

**A**

A grand jury charged Parker on August 25, 2009 with use of a firearm during a crime of violence (Count III) and four other counts. On January 6, 2011, Parker pleaded guilty to Count III, using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), with attempted kidnapping as the predicate crime of violence. The government agreed to a ten-year statutory minimum sentence and to dismiss all remaining counts.

Under the heading, "Appeal Waiver," the written plea agreement contained a waiver of Parker's rights to both directly appeal and collaterally challenge his conviction. App. 39. The collateral challenge waiver, the provision relevant to this appeal, states:

> The defendant also waives the defendant's right to challenge any conviction or sentence . . . or the manner in which the sentence was determined *in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255*.

App. 39 (emphasis added).

At Parker's plea hearing, as the government outlined the key terms of the agreement at the Court's request, the government noted that the agreement contained an

2

"appeal waiver" in which the "defendant would waive any appeal of his conviction and sentence" and "*would have to live with the sentence that is called for in this plea agreement*." App. 53 (emphasis added). The Court, referring to Parker's "right to appeal," asked him: "[Y]ou've eliminated the prospect of a greater sentence and that's why you're giving up your right to appeal?" App. 54. Parker replied: "Yes, sir." App. 54. The Court confirmed that Parker and his counsel were content with the bargain he received in exchange for the waiver—and only then did the Court conclude that it was "satisfied that the appeal waiver is both knowing and voluntary." App. 54.

**B**

Notwithstanding his collateral challenge waiver, in May 2016, Parker filed a motion to correct his sentence under 28 U.S.C. § 2255, urging the District Court to vacate his judgment and sentence because attempted kidnapping no longer qualified as a predicate crime of violence under § 924(c), in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The District Court found Parker's collateral challenge waiver enforceable and did not address the merits of his § 2255 motion. *United States v. Parker*, No. 3:09-CR-262-1, 2018 WL 2135008 (M.D. Pa. May 9, 2018). Parker timely appeals that decision.[1]

**II**[2]

---

[1] Parker's codefendant, Demario Antuan White, has filed an almost-identical challenge in *United States v. White*, No. 18-2502, which we will address separately.

[2] The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231 and § 2255(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and

3

Appellate and collateral challenge waivers are valid as long as they are knowing, voluntary, and do not work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019); *Khattak*, 273 F.3d at 563. "Waivers of the legal consequences of unknown future events are commonplace"—and in fact they "assist defendants in making favorable plea bargains." *Khattak*, 273 F.3d at 561–62 ("As the Supreme Court has stated, 'A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.'" (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). Courts should therefore "strictly construe[]" such waivers. *Id.* at 562. Parker argues that his waiver was not knowing and that it works a miscarriage of justice.

## A

Parker argues that he did not knowingly agree to the collateral challenge waiver because (1) the District Court failed to specifically inform him of the waiver and confirm his understanding of it,[3] (2) the written plea agreement "includes legal terminology and

---

§ 2255(d). We review the District Court's decision to enforce a waiver of the right to collaterally challenge a judgment and sentence *de novo*. *See United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001). We do not address the merits of Parker's appeal.

[3] Parker raises this argument under Federal Rule of Criminal Procedure 11. Because Parker did not raise this Rule 11 objection before the District Court, he "has the burden to satisfy the plain-error rule" as to this particular argument. *United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008) (internal quotations omitted). Under this standard, he must show "(1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." *Id.* at 928.

citations that would be unintelligible to a layperson," and (3) Parker could not have anticipated subsequent changes in the law. Appellant's Br. 6–8.

The government asserts that Parker waived his argument that he did not "knowingly" enter into the collateral challenge waiver because he did not raise this issue before the District Court. We disagree. The District Court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237–38 ("Compliance with this obligation aids our review and ensures that the defendant's rights are carefully considered."). "At minimum, [the District Court] should have reviewed the terms of the plea agreement and change-of-plea colloquy and addressed their sufficiency." *Id.* at 238. As was the case in *Mabry*, Parker does not argue that he was "actually misled" but facially challenges the terms of the agreement and substance of the plea hearing colloquy. *See id.* Again similar to *Mabry*, the District Court's opinion did not analyze whether Parker knowingly and voluntarily entered into the waiver. Thus we will. *See id.* ("Because the District Court did not do so,

_____

As this Court stated in *Corso*, relief on plain error review is discretionary, "and even if all three conditions are met we will exercise our discretion to correct the unpreserved error only if" we are persuaded that a miscarriage of justice would otherwise result. *Id.* at 929. Thus we incorporate our "miscarriage of justice" analysis below, *see* Section II.B, and find that Parker's Rule 11 argument does not warrant relief under the plain error standard. Section II.B demonstrates that the Rule 11 error alleged by Parker does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings," as required to demonstrate a "miscarriage of justice" on plain error review. *United States v. Goodson*, 544 F.3d 529, 541 n.11 (3d Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal quotations omitted).

5

we will engage in an independent review of the record of proceedings to determine whether the waiver of habeas was knowing and voluntary.").

It is undisputed that Parker's counsel explained the "Appellate Waiver" provision to him and that Parker acknowledged as much when he signed the agreement. App. 43 (The agreement states: "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it."). This acknowledgement counteracts Parker's unsubstantiated argument that the terms of the agreement would have been "unintelligible" to him. *See* Appellant's Br. 7.

The District Court's plea colloquy, described above, though not a model of technical perfection, called upon the government to review key terms, including Parker's "appeal waiver" and the fact that "he would have to live with the sentence that is called for in this plea agreement." App. 53. While neither the Court nor the government specifically addressed the "collateral challenge waiver," structured in the written agreement as part of the "Appeal Waiver," *see* App. 39, they addressed in very plain language both waivers' practical effect on Parker's rights. The discussion at Parker's plea hearing sufficiently counteracts his claim that the collateral challenge waiver was not knowing and voluntary.[4]

---

[4] We will note nevertheless that the District Court should not have delegated its duties to the government to "address the defendant personally" and "determine that the defendant understands" his appeal and collateral challenge waivers, Fed. R. Crim. P. 11(b)(1)(N), and the District Court should have more clearly addressed the collateral challenge waiver as distinct from the appeal waiver. (In a perfect world, these waivers would have been listed separately in the written agreement as well.) Though there were plausible Rule 11 deficiencies in the plea colloquy, we are satisfied that Parker entered into the waiver knowingly and voluntarily.

Additionally, we agree with the District Court's finding that subsequent changes in the law do not make a plea agreement "involuntary or unknowing or undo its binding nature." App. 6 (internal quotations omitted); *see also United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) ("The waiver of an appeal will not be invalidated merely because unanticipated events occur in the future. The prospective nature of waivers has 'never been thought to place [waivers] off limits or to render a defendant's act "unknowing."'" (quoting *Khattak*, 273 F.3d at 561) (alteration in original)). Thus, we find the "knowing and voluntary" requirement for a valid waiver satisfied.

## B

Parker next argues that enforcement of the waiver would constitute a "miscarriage of justice." Appellant's Br. 8–10. He claims that, pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), attempted kidnapping no longer constitutes a predicate "violent felony" to support his conviction under § 924(c). Appellant's Br. 8–9.

*Khattak* set forth the following factors to consider in determining whether enforcing a waiver results in a "miscarriage of justice":

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)) (alteration in original); *see also Mabry*, 536 F.3d at 243 (noting this analysis requires

courts to "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver").

The "clarity" and "gravity" of the alleged error and its impact on the defendant are not ascertainable because Parker entered into a plea agreement. Under the terms of the agreement, the government dismissed the remaining four counts against him, in addition to other concessions. Given the benefits Parker received, it is difficult to imagine what punishment he would have faced absent the agreement.

The character of the error is that the predicate "violent felony" to Parker's § 924(c) conviction, the only count to which he pleaded guilty, is allegedly no longer a viable predicate offense. While *Johnson* raises serious concerns and has upended sentences in many other cases, so many other variables were at play in the formation of the plea agreement here, and Parker undoubtedly garnered a benefit from his bargain. Plea agreements, by their nature

> always entail risks for the parties—risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and *risks relating to future developments in the law*. The salient point is that a plea agreement allocates risk between the two parties as they see fit.

*Lockett*, 406 F.3d at 213 (emphasis added) (quoting *United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005)).

In other words, a valid plea agreement "'requires knowledge of existing rights, not clairvoyance.'" *Id.* (quoting *Bradley*, 400 F.3d at 463).

We agree with the District Court that the effect on the government of correcting the alleged error "would be great." App. 6–7. "Not only would the government have to

re-litigate a nearly ten-year old crime, but the government would also find itself litigating more of these actions as prisoners learn of yet another avenue to challenge the propriety of their sentences." App. 7. Lastly, we believe that the defendant acquiesced fully and completely in the result, as he entered into a plea agreement by which he and the government both acquired risks and benefits that they presumably deemed worthwhile. *See Khattak*, 273 F.3d at 561 ("Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens."). Thus, we will enforce Parker's collateral challenge waiver, and we do not reach the merits of this appeal.

### III

For the foregoing reasons, we will affirm the judgment of the District Court.