*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0429p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-5960

SCOTTIE R. MAGOUIRK,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 04-00021—R. Allan Edgar, District Judge.

Argued: November 1, 2006

Decided and Filed: November 20, 2006

Before: GILMAN and GRIFFIN, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, Decatur, Georgia, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, Decatur, Georgia, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. A federal grand jury indicted George Bryant, Crystal Keel, Scottie Magouirk, and Richard Whited on ten counts relating to the manufacture and use of methamphetamine. Following a jury trial in Bryant's case and guilty pleas in the cases of Keel, Magouirk, and Whited, the district court imposed sentences of 100, 188, 151, and 151 months in prison, respectively. Magouirk explicitly agreed in both his plea agreement and plea colloquy to have his sentence governed solely by the U.S. Sentencing Guidelines notwithstanding *Booker*. Despite this agreement, he now claims that his sentence was unreasonable because the district court failed to adequately consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). For the reasons set forth below, we **AFFIRM** the 151-month sentence imposed by the district court.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

# I. BACKGROUND

## A.     Procedural background

The grand jury charged Magouirk in three counts of the ten-count indictment that also named Bryant, Keel, and Whited as codefendants. Magouirk pled guilty to Count One in exchange for the government's dismissal of the remaining two counts against him. Count One charged Magouirk with conspiracy to knowingly manufacture methamphetamine between January of 2001 and April 22, 2004, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The district court accepted Magouirk's guilty plea, as well as those of Keel and Whited, during a joint rearraignment hearing held in February of 2005. A probation officer then prepared a Presentence Report (PSR) in which she calculated Magouirk's Guidelines range to be between 151 and 188 months of imprisonment. In June of 2005, the district court chose the low end of the recommended range, sentencing Magouirk to 151 months in prison. This timely appeal followed.

## B.     Factual background

Because Magouirk's argument on appeal relates to only the procedural, as opposed to the substantive, aspects of his sentence, the details of his involvement in the methamphetamine conspiracy are not at issue. Instead, the resolution of this case turns on the plea agreement between Magouirk and the government. The key language in the plea agreement is found in paragraph 6, which reads as follows:

> 6.          Pursuant to Rule 11(c)(1)(C), the parties expressly agree that [the] appropriate sentence in this case will be determined by application of the United States Sentencing Guidelines. The parties agree that the sentencing court may consider any reliable evidence, including hearsay, in determining the guideline sentence and that the preponderance of the evidence standard will be applied. The defendant agrees to waive any challenge to the validity of the Sentencing Guidelines. The defendant acknowledges that he understands that nothing contained in the plea agreement or any factual basis limits the Court in its application of the Sentencing Guidelines or in the facts it may consider in establishing a Sentencing Guidelines range or an appropriate sentence and that any sentence imposed under the Sentencing Guidelines is nonparolable.

Of lesser importance is paragraph 11 of the plea agreement, which generally waives Magouirk's right to appeal his *conviction*. Magouirk did not, however, waive the right to appeal his *sentence*.

At the February 2005 joint rearraignment hearing, the district court asked the government to summarize the terms of each defendant's plea agreement. The government responded by distinguishing Magouirk's agreement from the agreements of both Keel and Whited as follows:

> Mr. Whited and Ms. Keel's agreements state that the sentence will be determined within the discretion of the Court as restrained by law, and, basically, sets out that the guidelines will be considered although they are not mandatory, as well as other factors of 18 U.S.C. Section 3553 will be considered.

> Mr. Magouirk's is a little different in that he is agreeing and we are agreeing with him subject to the Court's approval that he be sentenced under the guidelines. That's the only difference. He requests that the guidelines will determine his sentence.

Shortly thereafter, the district court, seeking clarification, engaged Magouirk individually as follows:

THE COURT:         Now, Mr. Magouirk, you understand that your plea agreement, and I'll talk about this a little bit more later, but do you understand that you are agreeing, as I understand it, that your sentence will be governed by the Federal Sentencing Guidelines?

MAGOUIRK:                     Yes, sir.

THE COURT:         Is that correct, you've discussed that?

COUNSEL:            Yes, Your Honor. We have had several conversations. The *Booker* decision obviously involves discretionary sentencing versus guideline sentencing, and —

THE COURT:         Okay.

COUNSEL:            —that was Mr. Magouirk's decision.

THE COURT:         Okay. That's fine. And we'll talk, as I said, we'll talk a little more about the guidelines in just a moment here.

. . .

THE COURT:         [H]ave you discussed the Federal Sentencing Guidelines and your possible sentences with your respective attorneys?

. . .

MAGOUIRK:                     Yes, sir.

. . .

THE COURT:         Okay. Let me tell you what's going to happen from here on out in this case with respect to each of you. . . .

With respect to Ms. Keel and Mr. Whited, I will consider those guidelines when I set your sentence, but I won't necessarily be bound by them. I could consider other factors as well. But at any rate, the sentence, the guidelines will be something that I will look at.

With respect to Mr. Magouirk, the guidelines will be, the sentence will be somewhere within those guidelines however they're determined.

Do you understand that?

MAGOUIRK:                     Yes, Sir.

In June of 2005, Magouirk filed a motion for a Guidelines-authorized downward departure based on five separate grounds, as well as a sixth residual ground representing a "combination" of the other five. The five specific grounds alleged by Magouirk were that (1) his participation in the conspiracy was minimal, (2) the amount of drugs involved accumulated over a long period of time, (3) his conduct was less serious than the typical conduct covered by "the heartland of the guidelines," (4) he suffered both mental and physical abuse during childhood, and (5) he was held

in solitary confinement for approximately four and a half months. In a separate sealed motion filed that same month, Magouirk asserted a final ground for the departure—namely, that he had cooperated with and rendered assistance to the government on multiple occasions and with regard to multiple other crimes.

At Magouirk's subsequent sentencing hearing, his counsel yet again confirmed Magouirk's desire to be sentenced according to the Guidelines, engaging in the following preliminary exchange with the district court:

> THE COURT:          Well, I mean—yeah.  I mean, as far as sentencing is concerned.  But, in other words, you want a sentence outside of the guidelines [by way of a departure or variance]?
>
> COUNSEL:          I think he's entitled to that, yes, sir.
>
> THE COURT:          Yeah.  And even though in your plea agreement you wanted him to be sentenced in the guidelines?
>
> COUNSEL:          May it please the Court, *the agreement is that to the sentencing guidelines.  The sentencing guidelines law also provides, however, for a 5K1 motion which Your Honor can sustain and set a lower guideline.*

(Emphasis added.)

Both Magouirk's counsel and the government argued at length their respective positions on Magouirk's downward-departure motion later in the hearing. After listening to argument on the first six grounds raised by Magouirk, the district court convened a sidebar to discuss separately the issue of Magouirk's cooperation with the government. When the court noted during the sidebar that "I don't grant 5Ks if that's what we're talking about here under *Booker*, unless the government makes them," Magouirk reminded the court of its discretion to award a downward departure where the government's failure to move for one is the result of bad faith. The district court specifically considered this exception, but concluded that it did not apply:

> Okay. I'm not going to grant a 5K [downward departure] in the case because I don't, from everything that I've heard here, I don't think that the government is acting in bad faith.  And I don't think that—let's put it this way—whether there is or not, I think that there is a basis for the government to believe that he has not rendered substantial assistance. I mean, he's rendered some assistance, but he hasn't rendered substantial assistance.

After allowing Magouirk one final opportunity to advocate his position regarding cooperation and after hearing the government's response that "[t]here are problems with [Magouirk] as a witness," the court reiterated its view that "this is not a close case."

The district court then stated in open court its position as to each of the other five grounds enumerated by Magouirk, concluding that none (nor the combination of all five) sufficed to warrant a downward departure from the Guidelines range of 151 to 188 months' imprisonment as proposed in the PSR. Having denied Magouirk's motion on all grounds, the district court sentenced Magouirk to 151 months in prison. The court finally asked, as "I have to," whether "there are any objections to the sentence that's just been pronounced here or the presentence report or anything else that this Court has not already dealt with here this afternoon?"  Magouirk's counsel responded:  "No, Your Honor."

## II. ANALYSIS

### A.      Standard of review

Post-*Booker*, we will not overturn a sentence imposed by a district court unless that sentence is unreasonable. *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). Reasonableness review has "both substantive and procedural components." *United States v. Jones,* 445 F.3d 865, 869 (6th Cir. 2006). A sentence will be deemed procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005) (footnote omitted); *see also United States v. McBride,* 434 F.3d 470, 476 n.3 (6th Cir. 2006) (noting that "[a] district court's failure to explicitly consider the section 3553(a) factors without other evidence in the record demonstrating that they were thoroughly considered . . . would result in a procedurally unreasonable" sentence).

### B.      Discussion

Under normal circumstances, a district court judge who treats the Guidelines as mandatory in imposing a sentence in this post-*Booker* world necessarily commits plain error. *United States v. Oliver*, 397 F.3d 369, 379-81 (6th Cir. 2005) ("Here, at the time of sentencing it was uncontested that mandatory federal guideline sentencing enhancements based on judge-found fact presented no Sixth Amendment concerns; however, by the time of appellate consideration, the law changed, and it is now evident that the district court's sentencing determination was in clear violation of *Booker*."). Equally clear, however, is that a defendant may waive the right to appeal his sentence, typically but not necessarily subject to certain limitations. *See, e.g.*, *United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005) (upholding as valid the defendant's waiver of the right to appeal his sentence directly or collaterally, save for claims of ineffective assistance of counsel or prosecutorial misconduct). Waiver may be implied even if not expressly stated, as long as the right being waived is actually known to the defendant. *Carter v. Sowders*, 5 F.3d 975, 981 (6th Cir. 1993) (concluding that, because Carter was not sufficiently aware of his right to confront a particular witness against him, Carter did not impliedly waive that right). Analyzing waiver and related issues is, at bottom, a fact-specific and right-specific inquiry:

> Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.

*United States v. Olano*, 507 U.S. 725, 733 (1993).

The record in the present case, as reproduced in pertinent part above, leaves little doubt that Magouirk, through his plea agreement and plea colloquy, in fact waived his *Booker* right to the advisory application of the Guidelines, instead binding himself to be sentenced solely according to the Guidelines. This waiver, moreover, was made voluntarily; that is, "knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) (brackets omitted). The colloquy between the district court and Magouirk, reproduced above, establishes the relevant facts. In short, the government is correct in arguing that "the record conclusively shows that defendant intentionally and knowingly negotiated in his plea agreement for a binding provision that limited his sentence in accordance with the Guidelines range and any Chapter 5 departures."

Our analysis, however, does not end simply because we adopt this conclusion. Determining that Magouirk waived the advisory application of the Guidelines, in other words, does not directly

resolve Magouirk's principal argument on appeal, which we understand to be that the advisory application of the Guidelines, and the related consideration of the 18 U.S.C. § 3553(a) statutory factors, is per se nonwaivable after *Booker*. Magouirk confirms this understanding in his reply brief, where he states that "Appellant[] is asking this Honorable Court to determine [] whether a plea agreement binding the district court to the guidelines is available post-*Booker*."

Because the right to be sentenced under an advisory application of the Guidelines is best construed as a waivable right, we answer this question in the affirmative. For a given right to be nonwaivable means that the right is so sacred and absolute that its waiver, as a matter of law, simply cannot be made voluntarily. "There may be some nonwaivable rights: ones so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." *Halbert v. Michigan*, 125 S. Ct. 2582, 2602 (2005) (Thomas, J., dissenting) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995)) (quotation marks omitted).

But an assertion of nonwaivability carries a heavy burden for the simple reason that our analysis starts "against a background presumption that legal rights generally . . . are subject to waiver by voluntary agreement of the parties." *Mezzanatto*, 513 U.S. at 203. Among these legal rights are "[t]he most basic rights of criminal defendants," *Peretz v. United States*, 501 U.S. 923, 936 (1991), including "many of the most fundamental protections afforded by the Constitution." *Mezzanatto*, 513 U.S. at 201 (citing, among other things, the double jeopardy defense, the right to a jury trial, the right to confront one's accusers, and the right to counsel). The presumption of waivability applies equally to statutory rights. *Id.* ("Likewise, absent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties.").

This court has addressed a similar—though, crucially, not identical—issue in several cases decided in the wake of *Booker*. Principally, in *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005), the court held that Bradley had waived his right to appeal his sentence except on certain inapplicable grounds because Bradley's plea agreement (1) had specified such a waiver, and (2) had explicitly acknowledged that the Guidelines would govern Bradley's sentence. *Id.* at 461. The court also implied that either of these two provisions was sufficient to create a waiver of Bradley's right to appeal his sentence. *Id.* at 465 ("reaching this conclusion both with respect to Bradley's agreement that he would be sentenced under the Guidelines and his waiver of the right to appeal").

Two of the cases cited by Magouirk have since clarified the scope of *Bradley*'s holding. First, in *United States v. Amiker*, 414 F.3d 606, 607 (6th Cir. 2005), the court explicitly declined to recognize as "an alternative holding in *Bradley*" the suggestion "that a defendant, by explicitly agreeing to be sentenced under the Guidelines, waives any right to *Booker*-resentencing." The *Amiker* court instead relegated this suggestion to dicta, explaining that "we think this language in *Bradley* is best interpreted as merely additional rationale serving only to buttress the court's decision that the defendant had waived his right to appeal." *Id.*; *see also United States v. Turner*, 173 F. App'x 402, 406 (6th Cir. 2006) (unpublished) (citing *Amiker* in reiterating that "[t]he *Bradley* court's opinion regarding the sufficiency of an agreement that the Guidelines would govern sentencing is *dicta* . . . ."). Amiker, who had not waived his right to appeal his sentence in his plea agreement, was accordingly entitled to resentencing in light of *Booker*. *Amiker*, 414 F.3d at 607. The *Amiker* opinion thus stands for the proposition that "where a plea agreement does not include an appeal waiver, an explicit agreement to be sentenced under the Guidelines carries no independent significance." *Id.* at 608.

In *United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005), the other relevant case cited by Magouirk, the court confirmed the *Amiker* court's understanding of *Bradley*:

As in *Amiker*, Puckett did not expressly waive his right to appeal in the plea agreement, and thus the current situation falls outside the reach of *Bradley*. The mere fact that Puckett agreed to be, and was, sentenced pursuant to the Sentencing Guidelines, does not preclude him from raising on appeal an alleged *Booker* error regarding his sentence.

*Id.* (citations omitted).

As in both *Amiker* and *Puckett*, Magouirk did not expressly waive his right to appeal his sentence in his plea agreement. The government in fact clarified for the district court at the rearraignment hearing that "[o]f course, [the defendants] can appeal their sentences. There is nothing in there about that, Judge." *Bradley*, accordingly, does not apply. Nor, however, does *Amiker* or *Puckett*. Because Magouirk entered into his plea agreement in February of 2005—*after* the Supreme Court had already decided *Booker*—neither *Amiker* nor *Puckett* is directly on point. For the same reason, we find nothing on point in the numerous other published and unpublished opinions from this circuit where the plea agreement was accepted by the district court before *Booker* was decided. *See, e.g.*, *Hochschild v. United States*, 442 F.3d 974, 979-81 (6th Cir. 2006) (remanding for resentencing where the pre-*Booker* waiver "cannot be read to cover statutory rights which flowed from *Booker*'s remedial holding"). Magouirk's case thus presents an issue of first impression in this circuit.

The issue, in other words, is whether a defendant who, through a valid plea agreement entered into after the Supreme Court's January 12, 2005 decision in *Booker*, stipulates that the Guidelines will govern his sentence despite *Booker*, but who does not explicitly waive his general right to appeal his sentence, nonetheless effectuates a waiver of his specific right to appeal his sentence on the grounds of a *Booker* violation. (Magouirk's right to appeal his sentence on any non-*Booker* grounds is not being challenged.)

As an initial matter, none of our sister circuits appear to have addressed, much less resolved, this issue. We therefore look principally to the reasoning underlying this court's relevant caselaw in setting forth our analysis. The implicit justifications for the holdings in *Amiker* and *Puckett* simply do not apply to plea agreements entered into after *Booker* was decided. In *Amiker*, the court reflected on the pre-*Booker* state of affairs regarding plea bargaining to make the point that a request to have one's sentence governed by the Guidelines was in fact totally *un*exceptional. *Amiker*, 414 F.3d at 607 ("At the time of Amiker's plea agreement and sentencing [i.e., pre-*Booker*], all plea agreements required, either explicitly or implicitly, that a defendant agree to sentencing under the Guidelines."). Now, of course, *Booker* is established law, and the district courts are required to treat the Guidelines as advisory only. A defendant like Magouirk who nonetheless prefers to be sentenced under the old mandatory scheme will therefore be requesting an exception to the rule. Whether this exception can and should be granted is precisely the issue that we now have to decide.

In *Amiker*, *Puckett*, and the host of similar decisions referenced above, the court either stated or implied that the error regarding the defendant's sentence was based on the district court's assumption that the Guidelines were mandatory. *See, e.g.*, *Hochschild*, 442 F.3d at 979 ("The district court erred by sentencing Hochschild under the erroneous assumption that the sentencing guidelines were mandatory."). Here, to the contrary, the district court was not only fully aware of the post-*Booker* advisory status of the Guidelines, but made sure that Magouirk was aware of that status as well. The portions of the plea colloquy reproduced above leave no doubt about this conclusion. As Magouirk's counsel specifically noted: "Yes, Your Honor. We have had several conversations. The *Booker* decision obviously involves discretionary sentencing versus guideline sentencing, and . . . that was Mr. Magouirk's decision [to have his sentence governed by the Guidelines]." That Magouirk's counsel made this statement, as opposed to Magouirk himself, is of little consequence. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant is

represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.").

Magouirk further argues that upholding his sentence on the ground of waiver would risk creating bad policy because "[t]he government, in pursuing Rule 11(c)(1)(C) plea agreements, will be permitted to circumvent the *Booker* change in the law by creating mandatory guidelines where they no longer exist and render 18 U.S.C. § 3553 meaningless." At oral argument, moreover, Magouirk's counsel conceded that this "public policy" argument constitutes the core of the appeal, contending that affirmance in the present case would effectively function as a "tool of the government" to recreate a "mandatory Guidelines system using a back door" that would "circumvent the *Booker* change in the law."

The facts of this very case, however, belie Magouirk's argument. As the government suggests in its brief, defendants may well have strategic reasons for doing in the future precisely what Magouirk did here. At a very basic level, the Guidelines afford defendants a degree of predictability that the *Booker* discretionary scheme by definition cannot. A district court, moreover, will not necessarily impose a more lenient sentence simply because the Guidelines are no longer mandatory, as the recent fallout in the case of Booker's coappellant Duncan Fanfan makes painfully obvious. *See United States v. Fanfan*, — F.3d —, 2006 WL 3217712 (1st Cir. Nov. 8, 2006) (affirming Fanfan's post-*Booker* sentence of 210 months in prison, even though his pre-*Booker* sentence was only 78 months); *see also United States v. Elliott*, — F.3d —, —, 2006 WL 3093641, at *4 (7th Cir. Nov. 2, 2006) ("More discretion [in light of *Booker*] can produce higher sentences as well as lower ones.").

The consideration of all of the factors set forth in 18 U.S.C. § 3553(a) might well lead a district court to sentence a defendant to the high end of the advisory Guidelines range, if not above it. A properly informed defendant in such a case might therefore help his cause by requesting that his sentence be governed solely by the Guidelines, including the possibility that the government will file a § 5K1.1 motion for a downward departure. This would make a sentence at the high end of the Guidelines range the worst-case scenario for most defendants, while retaining the chance for a below-the-range sentence.

Magouirk followed this path in the present case and, notwithstanding the district court's refusal to depart downward, it worked. The district court sentenced Magouirk to 151 months in prison, the lowest possible sentence that he could have received under the Guidelines absent a downward departure. His sentence, moreover, was equivalent in length to Whited's and 37 months shorter than Keel's, even though both of those sentences, unlike Magouirk's, resulted from the district court's advisory application of the Guidelines. Magouirk, in other words, did himself no harm by effectively opting out of *Booker*; if anything, he saved himself significant additional time in jail. In any event, it was Magouirk, not the government, who was "permitted to circumvent the *Booker* change in the law." Magouirk's "tool" argument thus has it backwards: Allowing the waiver of *Booker* rights will give *defendants* an additional "tool," providing them with another plea option that they will now be able to pursue with the government.

We therefore hold that a defendant may voluntarily waive his or her *Booker* rights, provided that the waiver is made "knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) (brackets omitted). The proper focus remains on the terms of the plea agreement and the words exchanged during the plea colloquy. Because Magouirk effectively and voluntarily waived his right to appeal his sentence on the ground that the district court should have considered the Guidelines as advisory only, and because his sentence at the very bottom of the applicable Guidelines range was

not otherwise unreasonable, we uphold the district court's decision to sentence Magouirk to 151 months in prison.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.