**NOT FOR FULL-TEXT PUBLICATION**
**File Name: 11a0234n.06**

**No. 08-1258**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 15, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

RAYMOND CANTY,

       Defendant-Appellant.

                              /

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    BATCHELDER, Chief Judge, SUHRHEINRICH, and GRIFFIN; Circuit Judges.

       **SUHRHEINRICH, Circuit Judge.**  Defendant Raymond Canty[1] raises various challenges to his sentence, imposed following his guilty plea to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h).  We dismiss this appeal based on the appeal waiver provision in Canty's plea agreement.

**I.  Background**

       The following facts are derived from Canty's plea agreement.  In approximately 1991, Canty bought the Willard Hotel in Detroit, Michigan.  Between 1991 and 1994, he and others used the hotel to distribute cocaine.  In 1995, codefendant Milton "Butch" Jones began overseeing the distribution of cocaine, heroin, and marijuana at the Willard Hotel.  As part of this conspiracy, Canty and Jones would also rob rival drug traffickers.  Coconspirator Eugene Mitchell murdered an individual named

---

       [1]This case was originally consolidated with *United States v. Jones*, No. 08-1658.  This court granted Jones's motion for a continuance.

Misha Deandre Dorsey (aka Deandre Howard). Both Canty and Mitchell perceived Dorsey as a threat to their operation and personal safety.

Jones and Canty were indicted on June 27, 2001, along with thirteen coconspirators, for engaging in a conspiracy to distribute marijuana and cocaine, engaging in a continuing criminal enterprise, and committing various murders during the course of the criminal enterprise. Because of the murder charges, the death penalty was initially sought against both Jones and Canty.

On September 6, 2007, Canty entered into a Rule 11 plea agreement with the Government. Canty pleaded guilty to Counts One and Two of the original indictment (there were several), which charged conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841, 846, and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). In the plea agreement, Canty stipulated to having distributed a reasonably foreseeable quantity of between 15-50 kilograms of cocaine on behalf of the drug conspiracy. He further stipulated that coconspirator Eugene Mitchell had murdered one Misha Deandre Dorsey in 1997, and that "the murder of Mr. Dorsey was a reasonably foreseeable result of the drug distribution conspiracy." Canty also agreed that "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 . . . (*See* USSG §§ 2D1.1(d)(1) and 2A1.1)," and that this was relevant conduct attributable to him.

Canty stipulated that, based on an offense level of 43 and a criminal history category of II, his "guideline range is life imprisonment." It was also agreed that "[n]either party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets."

Canty agreed to cooperate with the Government. The Government in turn agreed that while "[i]t was exclusively within the Government's discretion to determine whether defendant has provided substantial assistance," if it determined that Canty provided substantial assistance, it would seek either a downward departure at sentencing under United Sentencing Guidelines Manual section § 5K1.1, or a reduction of sentence pursuant to Fed. R. Crim. P. 35. The parties agreed that "if the Government makes [a 5K1.1] motion at or before the time of sentencing, the Government will recommend that the defendant be sentenced to a term of 240 months imprisonment." The parties further agreed that

> [i]n the event the court sentences the defendant to a period of confinement in excess of 240 months, the defendant will be afforded the opportunity to appeal such decision. Concomitantly, in the event the court imposes a sentence less than 240 months, the Government will be afforded the opportunity to appeal such decision. The court's failure to follow such a recommendation, however, if made, is not a valid basis for defendant to withdraw the guilty pleas or to rescind the plea agreement.

The plea agreement gave the Government the right to withdraw from the agreement if the court decided to impose a sentence outside the agreed guideline range. Canty could only withdraw from the agreement "if the Court decides to impose a sentence higher than the maximum allowed by Part 3 [the top of the sentencing guideline range]."

Most importantly for purposes of this appeal, the Rule 11 agreement provided that:

> If the sentence imposed does not exceed the maximum incarceration reflected in Part 3 of this agreement [life imprisonment], the defendant waives any right he has to appeal his convictions or sentences.

Finally, Canty and his attorney appended their signatures directly below the following paragraph, along with Government counsel:

> By signing below, Defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges

that he is satisfied with his attorneys' advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyers, and has had all of his questions answered by his lawyers.

At the change of plea hearing on September 6, 2007, Canty's counsel, Richard Lustig, affirmed that he and Canty had "gone over [the Rule 11 agreement] word for word, and the Defendant is well aware of his rights and understands the nature of the Rule 11 Agreement." Canty confirmed that he was 36 years of age, had completed twelfth grade, and was competent to plead guilty. After reviewing all of the elements of the charges to which he was pleading guilty, Government counsel recited the penalties, clarified that Canty's agreement to plead guilty depended on the Government's agreement to dismiss the homicide charge and thereby eliminate the death penalty from consideration. The Government explained the penalties on the record–a minimum of twenty years and a maximum of life imprisonment.

The Government recited the terms of the appeal waiver provision, which would allow Canty "the right to appeal if the Court sentences the Defendant[] to more than 240 months." The Government pointed out that "on Page 14 [of the Plea Agreement] the Defendant is waiving some significant appeal rights." At this point the court asked defense counsel if this was an accurate recitation of the relevant terms of the plea agreement. Counsel replied that:

> Well, I think it should be put on the record that the Government has modified the language from the original Rule 11 Plea Agreement. It's our understanding that we can, under the case law, basically argue for less than 20, and the Court would have the discretion to go above or below as indicated, and that it would be no contractual breach if the Court were to do that.

Canty then affirmed that he agreed with the terms of the plea agreement as recited by the Government and clarified by counsel.

-4-

The presentence report ("PSR") set Canty's base offense level at 43 as "required as death resulted directly from the defendant's conduct, pursuant to U.S.S.G. § 2D1.1(d)(1) and U.S.S.G. § 2A1.1." His total offense level was also 43. The PSR counted three criminal history points; one because Canty had "a criminal history conviction record resulting in one criminal history point" and two points because Canty was allegedly on supervised probation at the time of the instant offense. This placed Canty in criminal history category II.

Following entry of his guilty plea and prior to sentencing, Canty filed objections to the PSR; obtained the court's permission to be seen in the Wayne County jail by a neurologist (Canty has multiple sclerosis); filed a sentencing memorandum; and had an evidentiary hearing before the district court at which he and his neurologist testified in connection with his attempt to attain a variance based on his medical condition.

On January 10, 2008, the Government filed a section 5K1.1 motion. In the motion the Government set forth the plea hearing testimony of Eugene Mitchell, which confirmed that Canty had arranged for the killing of Howard for the sum of $10,000. Nevertheless, the Government recommended a 240-month sentence in light of Canty's significant cooperation, his medical condition, and the need to avoid sentencing disparity since Mitchell had received a 300-month sentence.

On January 22, 2008, the district court sentenced Canty to 240 months imprisonment, instead of a life sentence. The district court found that "the facts set out in the sentencing report and used in the calculation of the offense level and the criminal history category are accurate, and that the calculation itself of the sentencing guideline range is accurate." The court noted the sentencing was difficult "especially . . . because of the complexity of the affairs of several of the defendants,"

particularly "Mr. Jones and Mr. Mitchell in a relationship with Mr. Canty," and further noted that Canty had already spent five or six years in the Wayne County jail prior to sentencing. On the other hand, the court noted that it had to weigh "not just the sentencing guidelines, but 18 U.S.C. 3553(a)," but the interrelationship of the three defendants who originally had been charged with the death penalty and the proportionality of their sentences. The court recommended that Canty be placed in a prison that would best care for his various ailments, including his multiple sclerosis, and further recommended he be placed in a drug treatment program. At this point, the court asked defense counsel if they had "[a]nything further."[2] They did not, other than asking the district court to recommend that the Bureau of Prisons consider Canty for any drug/alcohol addiction programs, which the court then expressly ordered.

Thereafter, Canty filed a notice of appeal. In response, on June 3, 2009, the Government filed a motion to enforce the appeal waiver in the plea agreement.[3] Canty opposed the motion, arguing that he "ha[d] not waived his right to have the court correctly score the guidelines or to be sentenced to true and accurate information," and that "[t]he waiver language in the Rule 11 agreement referred to by the Government is limited to Mr. Canty's rights to appeal provided for by 18 USC § 3742(a)." He also contended that he "never stipulated to involvement in the murder of Misha Dorsey, which the Government relied upon in its scoring of the guidelines to use the first degree murder guideline (level 43) rather than the money laundering guideline (level 34)" and that

[2]The district court did not specifically invoke the language of *United States v. Bostic*, 371 F.3d 865. 872 (6th Cir. 2004) (announcing a new procedural rule requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to inquire whether they have any additional objections to the sentence just pronounced).

[3]Jones also appealed and opposed the Government's motion to enforce the waiver provision.

he was not on probation when he joined the conspiracy, which adversely increased his criminal history score from I to II. (Canty's Response to Motion to Dismiss Appeal Based on Appeal Waiver). "Because the validity of the plea agreement is being challenged," a panel of this court referred the motion to the merits panel.

## II. Analysis

In his appeal brief, Canty presents five issues, claiming Canty must be resentenced because: (1) he was erroneously assigned a base offense level of 43 based on the first degree murder of a drug dealer rival; (2) the district court clearly erred when it concluded he was on probation at the time of the offense; (3) he was entitled to a reduction for acceptance of responsibility; (4) the district court failed to exercise its discretion at sentencing; and (5) his money laundering offense was improperly grouped with the more serious drug offense. Notably, Canty does not claim that his guilty plea is invalid, let alone that the appeal waiver is invalid or limited. He asserts in his "Summary of Argument" section in his brief that Canty's sentence "was made on guideline scoring decisions based on recommendations of probation, pulled from police reports and untested co-defendant's statements[, and] [a]s a result, the sentence imposed is not born of [the] discretion [required by *United States v. Booker*]." He provides no argument whatsoever to support this assertion, however.

In its response brief, the Government argues that because Canty (and Jones) received the precise, and lowest, sentence for which they bargained, their appeals should be dismissed pursuant to their voluntary appeal waivers. The Government does not respond to Canty's other issues.

We review de novo the question of whether a defendant has waived his right to appeal his sentence in a plea agreement. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). It is well-settled that "[a] defendant may waive any right, including a constitutional right, in a plea

agreement so long as the waiver is knowing and voluntary." *United States v. Coker*, 514 F.3d 562, 573 (6th Cir. 2008) (citation omitted). This includes "the right to be sentenced under an advisory application of the Guidelines." *United States v. Magouirk*, 468 F.3d 943, 948 (6th Cir. 2006); *see also id.* at 951 (holding that "a defendant may voluntarily waive his or her *Booker* rights, provided that the waiver is made 'knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences.'" (citation omitted)).

Canty expressly and voluntarily waived his right to appeal his sentence in his plea agreement. First, the Government agreed that, "if" the Government made a substantial assistance motion, which it did, it would recommend that Canty be sentenced to 240 months, which it did. Further, Canty would have a right to appeal "[i]n the event the court sentences the defendant to a period of confinement in excess of 240 months," which it did not. In fact, the district court followed the Government's recommendation and sentenced Canty to exactly 240 months. Thus, Canty did not have a right to appeal on this basis. Further, because "the sentence imposed d[oes] not exceed the maximum incarceration [under the sentencing guideline range]," Canty also "waive[d] any right he ha[d] to appeal his convictions or sentences."[4]

In short, the plain language of the written agreement here precludes Canty from raising the arguments he now presents on appeal. *See United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006) ("Plea agreements are contractual in nature, so we use traditional contract law principles in

---

[4]The fact that Canty had a right to argue for imposition of a lower sentence before the district court does not equate to a right to appeal the district court's refusal to impose a lower sentence unless explicitly exempted from the appellate waiver provision. *Calderon*, 388 F.3d at 200 (holding that an otherwise valid waiver of appellate rights does not reserve the right to appeal the denial of an adjustment even when the defendant has reserved the right to seek an adjustment at sentencing).

interpreting and enforcing them."). As noted, Canty does not claim that his plea agreement was involuntary or not knowingly made, and the record clearly establishes the opposite. As we noted in *Coker*, this court has "repeatedly enforced plea agreements waiving specific appellate rights under similar circumstances." *Coker*, 514 F.3d at 573-74 (dismissing as waived the defendant's objection to the manner in which her sentence was calculated where the plea agreement waived her right to appeal "the sentence imposed and the manner in which it was determined" unless the court departed upwards from the guidelines); *United States v. Wilson*, 438 F.3d 672, 674-75 (6th Cir. 2006) (holding that the defendant waived his right to challenge the validity of his sentence under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), where the plea agreement expressly waived "the right to appeal and the right to attack collaterally the . . . sentence, including any order of restitution"); *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (holding that the defendants waived their appeal rights in the plea agreement where the waiver provision stated that if the court imposed a sentence equal or less than the agreed-upon sentence, the defendant waived "*any right*" to appeal his conviction or sentence).

In short, both sides received the benefit of their bargain. Canty agreed to plead guilty in return for the Government's agreement to dismiss the homicide charge and eliminate the death penalty from consideration. The Government bargained away two counts, and along with those counts the death penalty and Canty's exposure to a life term in return for Canty's guilty plea.

We are dismissing the appeal because Canty waived his right to appeal. *See United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006) (noting that even valid waivers or appeal do not divest the courts of appeals of jurisdiction; rather, "[t]he enforcement of appellate waivers fits more comfortably in the rubric of a mere claim-processing rule").

-9-

## III. Conclusion

For the foregoing, the appeal is **DISMISSED.**